THE NINTH AVENUE REMEDIAL
GROUP, et al., Plaintiffs,

v.

ALLIS-CHALMERS CORP.,
et al., Defendants.

No. 2:94–CV–331–RL–1.

United States District Court,
N.D. Indiana,
Hammond Division.

April 12, 2001.

Mark Erzen, Bruce White, Harold Abrahamson, for Ninth Avenue Remedial Group.

Louis Rundio Charles Gering, Don Hilliker, for Rexene Polymers.

Dale Stephenson, Vincent Atriano, Douglas McWilliams, for White Consolidated Industries.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendants, Rexene Polymers and White Consolidated Industries', joint oral motion of April 6, 2001, to exclude the expert testimony of Sandra Rennie pertaining to allocation. For the reasons set forth below, the motion is GRANTED to the extent that her testimony as to the Site is excluded.

### BACKGROUND

This case is an action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* (CERCLA). This case arises out of the activities of the late Steve Martell. In the 1970's, Martell (through various businesses and under various names) hauled wastes from a large number of companies in and around Chicago and Northwest Indiana. Martell and his businesses disposed of those wastes in several locations, including the Ninth Avenue Site (the Site) in Gary, Indiana. The Site eventually became a "Superfund" site under CERCLA. Plaintiffs performed and are continuing to perform the remedy at the Site, and have incurred costs in performing that remedy. To date, Plaintiffs have incurred approximately $34 million in costs, and expect to incur total costs

of about $38 million to finish their work cleaning up the Site. Plaintiffs brought the instant action in an attempt to recover some of these costs from other companies who were allegedly liable under CERCLA at the Site. After a two-week bench trial on liability in 1999, and after a three-day fairness hearing on Defendant, Apex Oil Company's, settlement, this Court is now in the second week of a bench trial on allocation. In this allocation phase of the trial, Plaintiffs seek recovery for a portion of their costs from the only remaining non-settling Defendants, Rexene Polymers (Rexene) and White Consolidated Industries (WCI).

In their case-in-chief, Plaintiffs called Sandra Rennie to testify as an expert on cost allocation. During voir dire, Rennie testified that important portions of her expert report were prepared by Dr. Gregory Shkuda, a chemist, and by Ms. Diane Martini, the remedial project manager of the Site. Neither Shkuda nor Martini will be testifying in the Plaintiffs' case-in-chief. After an extensive voir dire of Rennie, Rexene and WCI made a joint oral motion to exclude her expert testimony as it pertains to cost allocation. While Rexene and WCI made a variety of arguments as to why Rennie should not be accepted as an expert on cost allocation at all, the following ruling only addresses whether Rennie's expert testimony will be accepted as it relates to her work at and opinions involving the Site. The Court does not at this time address whether Rennie will be accepted as an expert to testify about cost allocation principles in general. As a final matter, the Court notes that in reaching the following finding, it took into account Rennie's credibility during her voir dire.

*DISCUSSION*

■ It is well-settled that under appropriate circumstances an expert witness may rely on information received or developed by another person. However, an expert may not testify as to opinions that are based on others' work in an effort to shield a vulnerable expert from cross examination. *See, e.g. Gong v. Hirsch,* 913 F.2d 1269, 1272–1274 (7th Cir.1990). Indeed, the Supreme Court has recognized that "[v]igorous cross-examination [is one] traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Seventh Circuit addressed this situation in *In the Matter of James Wilson Associates,* 965 F.2d 160 (7th Cir.1992). In that case, the Seventh Circuit observed:

The issue was the state of the building, and the expert who had evaluated that state—the consulting engineer—was the one who should have testified. The architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him—of becoming in short the engineer's spokesman ... [I]t is improper to use an expert witness as a screen against cross-examination....

*Id.* at 173. Accordingly, the question before the Court is whether Rennie's expert report and opinions with regard to the Site are reliable enough to be admitted under Federal Evidence Rules 702 and 703 despite the incorporation of Shkuda's and Martini's contributions to that report and those opinions. Given the posture of this case, in which neither Shkuda nor Martini will be testifying in Plaintiffs' case-in-chief, the Court finds for the following reasons that Rennie's report and opinions as to the Site are not sufficiently reliable to be admissible.

First, the Court finds that Shkuda's and Martini's contributions to Rennie's expert

report and opinions as to the Site were important, substantial, and necessary. These contributions are inextricably intertwined with Rennie's own work such that her testimony will not assist the Court when divorced from Shkuda's and Martini's contributions. For example, Matrix 1 of Rennie's expert report was prepared entirely by Martini and Shkuda. This matrix, which identified the waste streams associated with each of the parties, provided the basis for assignment of cost elements to the various remedial elements. Rennie did not exercise any independent judgment to review Martini and Shkuda's data categorizations and conclusions regarding the waste streams attributed to each party, but instead assumed their conclusions to be correct in reaching her own expert opinions as to the Site. Also, Rennie did not exercise any independent judgment in reviewing the costs associated with remediating the waste streams listed in Matrix 1, but instead relied entirely and without question on Martini's conclusions as to the cleanup costs in forming her own expert opinions. Indeed, Rennie does not have enough expertise in an area sufficiently related to the chemistry/science-based fields, the accounting/economics-based fields, or the remedial environmental engineering fields such that she could conduct any meaningful review of the aforementioned data categorizations, compilations, and conclusions provided by Martini and Shkuda. Because these data categorizations, compilations, and conclusions relied on by Rennie were substantial and necessary assumptions in forming her own opinions as to the Site, the Court finds that, in the absence of any evidence of the reliability of Shkuda and Martini's aforementioned contributions, Rennie's testimony is not based upon sufficiently reliable facts or data such that it would assist the Court as required under Federal Evidence Rules 702 and 703.

As stated earlier, Plaintiffs will not be calling Martini or Shkuda to testify as to how they came up with their aforementioned data categorizations, compilations, and conclusions provided to Rennie. Therefore, the Court has no way to assess the reliability of these categorizations, compilations, and conclusions upon which Rennie relied in forming her own opinions on cost allocation as to the Site. Indeed, Rennie herself cannot testify or be cross-examined as to the reliability of methodologies used to prepare the aforementioned categorizations, compilations, and conclusions, nor can she testify for the purpose of vouching for the truth of the aforementioned. *In the Matter of James Wilson Associates,* 965 F.2d at 172–73.

This Court is a gatekeeper charged to exclude evidence that is not sufficiently reliable. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As such a gatekeeper, the Court excludes Rennie's expert report and opinions as to the Site as too speculative and unreliable to be admitted because they are no more reliable than the underlying data categorizations, compilations, and conclusions provided by Shkuda and Martini. *Walker v. Soo Line Railroad Co.,* 208 F.3d 581, 588 (7th Cir.2000). Martini and Shkuda's categorizations, compilations, and conclusions (which required specialized knowledge of chemistry/science-based fields, accounting/economics-based fields, or remedial environmental engineering fields that Rennie does not have) have not been shown to be reliable because there has been no independent evidence to that effect, because Rennie is not qualified to exercise meaningful review of the aforementioned contributions, and because Rennie did not in fact exercise meaningful review of their aforementioned contributions.

The Court finds distinguishable Plaintiffs' citation to the Seventh Circuit's *Walker* opinion. In *Walker*, a medical doctor was held to be able to testify as an expert even though she relied in part on expert opinions of other medical doctors. *Id.* at 588–90. However, in *Walker*, the testifying doctor had sufficient expertise and capability to evaluate the contributions of the doctors upon which she relied. *Id.* at 589. In the instant case, on the other hand, the Court does not find that Rennie has sufficient expertise in the chemistry/science-based fields, the accounting/economics-based fields, and the remedial environmental engineering fields to evaluate Shkuda's and Martini's contributions. Indeed, she did not evaluate their contributions at all but instead assumed them to be correct.

The Court also finds distinguishable Plaintiffs' citation to *United States v. Gardner*, 211 F.3d 1049, 1053–54 (7th Cir. 2000), in which the Seventh Circuit held that an arson expert could rely on "facts or data" in the form of "reports, photographs, and third-party observations" in reaching his expert opinions. In the instant case, on the other hand, Rennie did not merely rely upon facts or data collected by others, but instead relied upon the categorizations and conclusions, based on specialized knowledge, drawn from those facts and data.

Thus, the Court finds Rennie's expert report and opinions as to the Site are too speculative and not sufficiently based upon reliable facts or data to be admissible under Federal Evidence Rules 702 and 703, *Daubert*, and its progeny. The Court also finds that, in the absence of Shkuda or Martini's testimony, the prejudice substantially outweighs the probative value of Rennie's testimony as it regards the Site. Accordingly, finding no reliable basis for admitting such testimony, the motion to exclude her testimony is **GRANTED** to the extent that her testimony regarding the Site is excluded. The Court does not address whether Rennie's expert testimony would be sufficiently reliable to be admissible had Plaintiffs called Shkuda or Martini to testify in their case-in-chief.

*CONCLUSION*

For the reasons set forth above, the joint oral motion to exclude the expert testimony of Sandra Rennie pertaining to allocation is **GRANTED** to the extent that her testimony as to the Site is excluded.